**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHAEL LAMARCO, AUSTIN LAMARCO and JOHN SCOTT, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**TRIUMPH CONSTRUCTION CORP. and CARLO CUZZI, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Michael Lamarco, Austin Lamarco, and John Scott (the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Defendant Triumph Construction Corp.  (hereinafter "Triumph" or "Corporate Defendant"), is a construction corporation rendering services including construction, demolition, street and roadways reconstruction, installation of water main and sewer mains, and serves as a

utility contractor performing both gas and electric construction services throughout New York City.

2.      Plaintiffs are laborers, mechanics, masons, operators, drivers, and foremen who furnished labor to Defendants at Triumph's yard and on projects in the greater New York City area.

3.      Throughout the relevant time period, notwithstanding the fact that Plaintiffs were required to report to and perform work at Triumph's yard each morning prior to traveling to the job sites and were required to return to Triumph's yard after leaving the job sites each afternoon, Plaintiffs were only paid for time spent working at the job sites and were not compensated at all for time spent working at Triumph's yard or for time spent traveling to and from Triumph's yard and job sites. Thus, Plaintiffs were not paid at all for a significant number of work hours each week, many of which were hours worked in excess of forty (40) in a week, for which they should have been paid overtime premiums.

4.      Further, throughout the relevant time period, Plaintiffs frequently were not provided with a full thirty (30)minute uninterrupted meal break during their work day; instead, Plaintiffs were provided only between ten (10) to twenty (20) minutes or, in some cases, were not provided with lunch break time at all. Despite this fact, Plaintiffs were improperly deducted 30-minutes from their work hours for each work day, regardless of whether they were able to take a 30-minute break or not.

5.      Plaintiffs bring this action to recover unpaid overtime pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and for unpaid "gap-time" wages owe to them pursuant to NYLL §663.

6.      Plaintiffs bring their FLSA overtime claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all laborers, mechanics, masons, operators, drivers, and foremen, employed by Defendants during the six (6)-year, period plus COVID-19 tolling, preceding the filing of this complaint.

7.      In addition, Plaintiff Austin Lamarco brings an individual claim for retaliation under the section 215(a)(3) of the FLSA and under section 215 of the NYLL.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9.      In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 201 et seq.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Corporate Defendant's business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On

April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

13.    Plaintiff Michael Lamarco ("M. Lamarco") was, at all relevant times, an adult individual residing in Monroe County, Pennsylvania.

14.    M. Lamarco worked for Defendants from in or around 2004 until in or around July 2022 (the "M. Lamarco Employment Period")

15.    Throughout the M. Lamarco Employment Period, Plaintiff M. Lamarco worked as an operator and as a driver.

16.    Throughout the M. Lamarco Employment Period, M. Lamarco was a member of the Local Union 15 Operating Engineers.

17.    Throughout the M. Lamarco Employment Period, M. Lamarco typically worked between five (5) to six (6) days per week, Monday through Saturday and some days Sunday,

beginning at around 6:00 am and ending between approximately 4:00 pm and 4:30 pm, and sometimes as late as 5:30 or 6:00 pm depending on traffic and the location of the job site, for a total of between approximately fifty and sixty (50-60) hours per week.

18.     Throughout the M. Lamarco Employment Period, M. Lamarco was paid the union wage rate that was increased by approximately $1.00 annually. By 2022, M. Lamarco was paid approximately seventy-five dollars ($75.00) per hour, plus benefits, for regular hours for which he received compensation.

19.     Throughout the M. Lamarco Employment Period, M. Lamarco worked at Defendants' yard located at 1354 Seneca Avenue, Bronx, New York 10474 (the "Yard"), and on projects at several different job sites across the five boroughs of New York City.

20.     Plaintiff Austin Lamarco ("A. Lamarco") was, at all relevant times, an adult individual residing in Morris County, New Jersey.

21.     A. Lamarco worked for Defendants from in or around 2016 through in or around July 2024 (the "A. Lamarco Employment Period").

22.     From the beginning of A. Lamarco Employment Period until approximately 2020, A. Lamarco worked as a laborer and as a driver.

23.     From approximately 2020 through the end of the A. Lamarco Employment Period, A Lamarco worked as a laborer.

24.     Throughout the A. Lamarco Employment Period, A. Lamarco was a member of the Laborer's Local Union 1010.

25.     Throughout the A. Lamarco Employment Period, A. Lamarco typically worked between five (5) to six (6) days per week, Monday through Saturday and some days Sunday, from approximately 6:00 am to approximately 4:00 pm or 4:30 pm, and sometimes later, for a total of

approximately fifty (50) to fifty-five (55) hours per week, and sometimes more.

26.     Throughout the A. Lamarco Employment Period, A. Lamarco was paid the union wage rate.  At the time that he left his employment with Defendants, in approximately July 2024, he was receiving approximately forty-four dollars ($44.00) per hour, plus benefits, for regular hours for which he received compensation.

27.     Throughout the A. Lamarco Employment Period, A. Lamarco worked at Defendants' Yard and on projects at several different job sites across the five boroughs of New York City.

28.     Plaintiff John Scott ("Scott") was, at all relevant times, an adult individual residing in Orange County and Westchester, New York.

29.     Scott has worked for Defendants from in or around 2020 to the present (the "Scott Employment Period").

30.     Throughout the Scott Employment Period, Scott has worked as an operator and as a driver.

31.     Throughout the Scott Employment Period, Scott has been a member of the Local Union 15 Operating Engineers.

32.     From the beginning of the Scott Employment Period, Scott typically worked between five (5) to six (6) days per week, Monday through Saturday and some days Sunday, from approximately 6:00 am to approximately 4:00 pm or 4:30 pm, and sometimes later, for a total of approximately fifty (50) to fifty-five (55) hours per week, and sometimes more.

33.     From 2021 to the present, Scott has worked sporadically on Saturday and Sunday morning and/or night shifts or any other weekday when needed.

34.     Throughout the Scott Employment Period, Scott was paid at the union wage rate,

which increased by approximately $1 dollar annually. Currently, Scott is paid approximately seventy-four dollars ($74.00) per hour, plus benefits, for regular hours for which he receives compensation.

35.    Throughout the Scott Employment Period, Scott worked at Defendants' Yard and on projects at several different job sites across the five boroughs of New York City.

36.    Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto and is incorporated herein.

**Defendants:**

37.    <u>Defendant Triumph Construction Corp.</u> is an active New York corporation with its principal place of business located at 1354 Seneca Avenue, Bronx, New York 10474.

38.    Triumph was registered with the New York State Department of State, Division of Corporations on February 5, 1999.

39.    Upon information and belief, throughout the relevant time period, Triumph has contracted with Consolidated Edison Company of New York, Inc. ("Con Edison") to provide construction, repair, excavation, and maintenance of gas lines/electricity and other public utility systems (the "Utility Projects").

40.    Upon information and belief, throughout the relevant time period, Triumph has contracted with several city agencies, including, but not limited to, New York City Department of Design & Construction, New York City Economic Development Corp, and New York City Department of Transportation. (https://triumphconstructionny.com/overview-2/)

41.    <u>Defendant Carlo Cuzzi</u> ("Cuzzi" or the "Individual Defendant" and collectively with Triumph, the "Defendants") has been a founder, owner and/or officer of Triumph throughout the relevant time period. (*See* https://triumphconstructionny.com/).

7

42.     The Individual Defendant maintained operational control over Triumph by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

43.     Upon information and belief, the Individual Defendant arrived at the Yard every morning to provide instruction to the foreman and/or supervisors and was aware that workers, including Plaintiffs, Collective and Class Members, were performing work at the Yard for which they were not compensated.

44.     Throughout the relevant time period, the Individual Defendant and Corporate Defendant jointly employed Plaintiffs, Collective Action Members and Class Members.

45.     The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in his direction and control of Plaintiffs and the Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

46.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

47.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

48.     At all relevant times, Plaintiffs, the opt-in plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Triumph at any time since April 24, 2022 through the present (the "Collective Action Period") who worked as laborers, mechanics, masons, operators, drivers, and foremen (the "Collective Action Members").

50.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members were, *inter alia*, not paid overtime wages for all hours worked in excess of forty (40) hours in a workweek; were not paid any wages at all for work performed outside of job sites including work performed at the Defendants' yard and on the way to and from the yard to the job site(s). As a result of these policies, Plaintiffs and the Collective Action Members have suffered significant unpaid overtime premium payments for all hours worked in excess of forty (40) hours per week.

51.     Plaintiffs and the Collective Action Members were similarly situated in that they were required to perform work at the Defendants' yard, travel from/to the yard to/from the jobsites without receiving compensation, including overtime premium compensation for hours worked over forty (40) hours in a given workweek.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

52.     Pursuant to the NYLL, Plaintiffs bring their Third and Forth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Triumph at any time since September 8, 2018 through the present (the "Class Period") who worked as laborers, mechanics, masons, operators, drivers, and foremen (the "Class Members").

53.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants.

Notice can be provided by means permissible under Fed. R. Civ. P. 23.

54. <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

55. Upon information and belief, there are in excess of forty (40) Class Members.

56. <u>The questions of law and fact common to the Class predominate over any questions</u>
<u>solely affecting the individual members of the Class</u>. These common questions include, but are not
limited to:

a. whether Defendants employed Plaintiffs and the Class Members within the
meaning of the NYLL;

b. whether Defendants failed to keep true and accurate time records for all hours
worked by Plaintiffs and the Class Members;

c. whether Defendants failed to pay Plaintiffs and the Class Members for all hours
worked in excess of forty (40) hours in a given workweek;

d. whether Defendants failed to pay Plaintiffs and the Class Members at their regular
rate for all non-overtime hours worked (i.e., "gap-time" wages);

e. whether Defendants failed to pay wages to Plaintiffs and the Class Members for all
time spent working and traveling from/to Defendants' yard to/from job sites for the
benefit of Defendants;

f. whether Defendants failed to provide to Plaintiffs and the Class Members with an
uninterrupted full thirty (30) minute-lunch break;

g. whether Defendants' failure to pay Plaintiffs and the Class Members lacked a good
faith basis; and

h. whether Defendants are liable for all damages claimed hereunder, including but not

limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

57.    Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, were employees of the Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime wages for all hours worked in excess of forty (40) in a workweek; were not paid any wages at all for work performed outside of job sites including work performed at the Defendants' yard and on the way to and from the yard to the job site(s); and were not paid wages for all hours worked in a given workweek.

58.    Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

59.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

61.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit against the corporate defendants.

62.    The individual members of the class have no interest or capacity to bring separate actions; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. Plaintiffs are unaware of any other currently pending litigation concerning this controversy.

## ADDITIONAL FACTUAL ALLEGATIONS

**A.    Plaintiffs and Class Members were not paid for all hours worked**

63.    During their respective employment periods, Plaintiffs did not receive wages for all hours worked at their regular rate or overtime premiums of one and one-half (1.5) times their hourly rates for all hours worked in excess of forty (40) in a week.

64.    During their respective employment periods, Plaintiffs were responsible for arriving at Defendants' Yard by 6:00 am in order to check in their supervisors and/or foremen, receiving their work assignments from them, loading up the truck with materials such as tools, cold patch asphalt, and/or barrels, materials needed for the day, fill up the truck with fuel when needed, taking Defendants' truck to the job site, arriving at the job site by 7:00 am or 7:30 am depending the jobsite location, performing certain laborer tasks with the crew on the job sites until the end of the work day at the job site (typically 3:30 pm), then returning to the Yard between 5:00 pm and 6:00 pm, and sometimes later, depending on the distance and traffic between the job site and the Yard.

65.    Throughout the relevant time period, notwithstanding the fact that Plaintiffs were required to report to and perform work at Defendants' Yard at the start of their shift prior to traveling to the job sites and were required to return to the Yard at the end of the day to return any materials and the trucks they drove to the job sites, Plaintiffs were only paid for time spent working at the job sites and were not compensated at all for time spent at the Yard or for time spent traveling to and from the Yard and job sites.

66.    Specifically, at the start of each shift, Plaintiffs were required to arrive at Defendants' Yard by no later than 6:00 a.m., but were not paid until they arrived at the job site at approximately 7:00 a.m.

67.     At the Yard, Plaintiffs frequently interacted with their supervisors and/or foremen, who informed Plaintiffs of their job assignments and any materials that Plaintiffs were required to load on the trucks for the jobs.

68.     Thus, pursuant to Defendants' policy, Plaintiffs were not paid for approximately one (1) hour every day that they worked for Defendants consisting of pre-shift work.

69.     Moreover, Plaintiffs were only paid until they completed their work at the job sites, at approximately 3:30 p.m., even though they were required to then return the trucks to the Yard after leaving the job sites.

70.     Plaintiffs were required to return to the Yard at the end of the day to return the trucks and retrieve their personal vehicles. At no point during their respective employment periods, did Plaintiffs' paystubs reflect the hours spent traveling from the job sites to the Yard at the end of Plaintiffs' shifts. While Plaintiffs typically spent between thirty (30) minutes and one and a half (1.5) hours, depending on the job sites' distance and traffic, returning Defendants' trucks to the Yard, Plaintiffs were not compensated for this mandatory work time which was performed strictly for Defendants' benefit.

71.     Whether or not Plaintiffs were responsible for driving Defendants' trucks, they were required to travel via Defendants' trucks from the Yard to the job sites and from the job sites to the Yard.

72.     Thus, while Plaintiffs performed a total of approximately one and a half (1.5) to two and a half (2.5), and sometimes more, hours of work outside of the job sites each day, including time in the Yard and the travel time from the Yard to the job sites each day, Plaintiffs were not paid for these hours, which were largely hours worked in excess of forty (40) in a week, for which they should have been paid overtime premiums.

13

73.    Throughout Plaintiffs' respective employment periods, Defendants only recorded Plaintiffs' work at the job sites, typically from 7:00 a.m. until 3:30 p.m., and did not record any work performed at the Yard or traveling from the Yard to the jobsites, or from the jobsites to the Yard.

74.    Because Defendants paid Plaintiffs only for the time spent at the job sites, the time spent at the Yard or driving between the Yard and the job sites was never reflected on Plaintiffs' paystubs. Defendants' policy to only record the time worked by Plaintiffs at the job sites contributed to the willful failure to pay for any work performed outside of the jobsites. Defendants' failure to pay for work performed outside of the jobsites was thus a willful violation of the law because they were aware or should have been aware that employees are required to be paid for all time worked, including mandatory travel time, yet Defendants chose not to pay for any time spent working outside of the job sites.

75.    As a result, Plaintiffs were not paid at all for a significant number of work hours each week, many of which were hours worked in excess of forty (40) in a week, for which they should have been paid overtime premiums.

76.    While Plaintiffs were required to perform pre- and post-shift work consisting of reporting to the Yard, picking up and dropping off the trucks from the Yard, loading the materials on the truck, Plaintiffs were only compensated for the work they performed at the job sites pursuant to Defendants' policies. Thus, Defendants failed to compensate Plaintiffs for significant daily hours worked, resulting in significant unpaid regular wages and/or unpaid overtime premiums.

77.    Defendants' failure to pay wages of any kind for time spent working in the Yard and traveling between the Yard and the job sites, and overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a willful

corporate policy that applied to all laborers, mechanics, operators, drivers, and foremen employed by Defendants.

**B.      Plaintiffs and Class Members were not provided with full 30-minute meal breaks**

78.      During the relevant time period, on numerous occasions, Defendants failed to provide Plaintiffs with a full 30-minute uninterrupted lunch break, as required by law.

79.      Despite not providing the full lunch break, Defendants' policy was to deduct 30-minutes from the Plaintiffs' recorded work time each day for the purported break time.

80.      During the Plaintiffs' and Class Members' employment period, on several occasions, Plaintiffs were required to work from 7:00 am to 3:30 pm without any breaks, let alone a 30-minute uninterrupted meal break. When Plaintiffs and Class Members inquired about a meal break, their foreman would instruct them to continue working because the work needed to get done.

81.      In addition, on numerous occasions, when Plaintiffs and Class Members were allowed to have meal breaks, Plaintiffs and Class Members were permitted to take only between ten (10) to twenty (20) minutes, instead of the full 30-minutes required by the NYLL.

82.      The wage deduction was solely for the benefit of Defendants, as Plaintiffs and Class Members were not provided with the full lunch break for which wages were deducted. Thus, Defendants failed to compensate Plaintiffs for significant daily hours worked, resulting in significant unpaid regular wages and/or unpaid overtime premiums.

**C.      Defendants retaliated against Austin Lamarco**

83.      A. Lamarco suffered retaliation from the Defendants and their agents, after A. Lamarco complained to his supervisor about not providing a meal break.

84.      First, in or around July 2024, A. Lamarco worked a double shift in a single day.

After completing his work, A. Lamarco returned home to rest, when in the middle of the night he was required to come back to work an additional (third) shift.

85.     At or around 1:00 pm, A. Lamarco asked his foreman, Alvaro Gonzalez, whether he could take his lunch break, to which his foreman answered negatively, stating that the crew needed to continue working.

86.     A. Lamarco asked whether his meal break was going to be deducted if he was not allowed to take his lunch break, to which his foreman answered that "as usual the meal break would still be deducted."

87.     After having worked three shifts in less than 24 hours, A. Lamarco decided to take his lunch break despite his foreman's refusal. A. Lamarco stopped working and took an approximately 30-minute meal break, after which A. Lamarco returned to work.

88.     The day after the incident, A. Lamarco received a text message from his foreman stating that "there was no work for him." A. Lamarco received the same text messages for two consecutive days after the day of the incident.

89.     On the third day, A. Lamarco contacted his supervisor, John McCann, to request an explanation for not receiving work assignments following the day of the incident, while the rest of his crew had been assigned to work.

90.     During a recorded conversation between McCann and A. Lamarco, McCann explained that due to A. Lamarco complaining about not being provided with a meal break and his decision to take his lunch break despite the foreman's instruction, the company had decided to terminate him. Specifically, McCann stated "we do not ask much…sometimes, occasionally you have to work through that… you have to do that kind of stuff", referring to Defendants' requirement that he continue working without receiving a break which was nevertheless deducted

from his compensation.

91.     A. Lamarco complained about not being provided with a full 30-minute lunch break when Defendants as a regular policy would deduct pay from his wages. Pursuant to NYLL § 162, employers must provide all employees with at least 30 minutes of unpaid time off for meal break each shift.

92.     After A. Lamarco complained about Defendants' failure to comply with the law, the Defendants, in response, immediately took and adverse action against A. Lamarco.

93.     After A. Lamarco engaged in this protected activity, Defendants retaliated against A. Lamarco, by terminating him.

94.     The retaliation by Defendants, through Defendants' supervisor McCann, was a direct result of A. Lamarco's complaint about Defendants not providing meal breaks but deducting such breaks from his wages, in violation of state and federal law.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

95.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants violated the FLSA overtime rights of Plaintiffs and the Collective Action Members by improperly failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

97.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and

215(a)(2).

98.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

99.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action.

### SECOND CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – RETALIATION
**(Brought on Behalf of Plaintiff Austin Lamarco)**

100.    Plaintiff A. Lamarco, on behalf of himself, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

101.    A. Lamarco complained to Defendants about their failure to provide him with a meal break and yet failing to pay him for all time that he worked by automatically deducting time for meal breaks that were not provided.

102.    Plaintiff's actions were a protected activity under FLSA.

103.    Corporate Defendant and its agents retaliated against A. Lamarco by not assigning him work and ultimately terminating A. Lamarco's employment.

104.    By the acts described here, and other acts, which are ongoing as of the filing of this Complaint, Corporate Defendant and his agents have reduced the income of Plaintiff, thus violating 29 U.S.C. § 215(a)(3).

105.    Plaintiff A. Lamarco has suffered damages, including but not limited to loss of

wages, punitive damages and interest.

106.    As a result of Corporate Defendant and its agent's conduct, Plaintiff A. Lamarco is entitled to monetary relief, including, but not limited to compensatory and other damages, reasonable attorney's fees and costs, punitive damages, and other appropriate relief.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

107.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

108.    Defendants violated the NYLL overtime rights of the Plaintiffs and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

109.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

110.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID GAP-TIME WAGES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

111.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.     Throughout the relevant time period, Defendants failed to pay Plaintiffs and the Class Members for all hours worked each week.

113.     During weeks when Plaintiffs and the Class Members worked fewer than forty (40) hours, the hours that Defendants failed to pay should have been paid at Plaintiffs and Class Members' regular rates.

114.     By failing to pay Plaintiffs and the Class Members at their regular rate for all non-overtime hours worked each week, Defendants have violated NYLL § 663(1).

115.     Defendants' failure to pay wages for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid regular wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq*.

**FIFTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF NYLL**
**(Brought on Behalf of Plaintiff Austin Lamarco)**

116.     Plaintiff A. Lamarco, on behalf of himself, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

117.     Plaintiff A. Lamarco attempted to enforce his rights by complaining about

Defendants' failure to provide a full 30-minute meal break pursuant to NYLL § 162 and automatically deducting from his wages for the breaks that were not provided, in further violation of the NYLL.

118.    Plaintiff's actions were protected activity under NYLL § 215.

119.    Defendants retaliated against A. Lamarco by not assigning him work and ultimately terminating A. Lamarco's employment.

120.    By the acts described herein, and other acts, which are ongoing as of the filing of this Complaint, Defendants and their agents have reduced the income of Plaintiff, thus violating the NYLL § 215.

121.    Plaintiff A. Lamarco has suffered damages, including but not limited to loss of wages, punitive damages and interest.

122.    Pursuant to NYLL § 215(b), notice of this cause of action was served on the Attorney General.

123.    As a result of Defendants' and their agent's conduct, Plaintiff A. Lamarco is entitled to monetary relief, including, but not limited to compensatory and other damages, reasonable attorney's fees and costs, punitive damages, and other appropriate relief.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation, pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation, pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of compensatory damages as a result of Defendants' failure to pay gap-time wages, pursuant to the NYLL and supporting regulations;

i.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay gap-time wages, pursuant to the NYLL and supporting regulations;

j.  An award of compensatory, economic, non-economic and punitive damages as to Plaintiff, A. Lamarco, arising out of Defendants' unlawful retaliation against A. Lamarco, pursuant to the FLSA and NYLL;

k.  An award of back wages and future lost wages arising out of Defendants' illegal retaliation against Plaintiff, A. Lamarco;

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.  Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
      April 24, 2025

                        Respectfully submitted,

                        **PELTON GRAHAM LLC**

                        By: _____
                        Brent E. Pelton (BP 1055)
                        pelton@peltongraham.com
                        Taylor B. Graham (TG 9607)
                        graham@peltongraham.com
                        111 Broadway, Suite 1503
                        New York, New York 10006
                        Telephone: (212) 385-9700
                        Facsimile: (212) 385-0800

                        *Attorneys for Plaintiffs and the putative*
                        *FLSA Collective and Class*

### Notice of Shareholder Liability for Services Rendered
### Pursuant to § 630 of the Business Corporation Law of New York

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **TRIUMPH CONSTRUCTION CORP,** are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of **TRIUMPH CONSTRUCTION CORP,** and charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6) year period preceding the filing of the complaint.

Dated: April 24, 2025

_____
Brent. E. Pelton

## **CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **TRIUMPH CONSTRUCTION CORP**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


Signed by:

_____          _____
541F818D2B54451...                                      Michael Lamarco

Signature                                                         Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **TRIUMPH CONSTRUCTION CORP**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

*Austin Lamarco*

7D44FFA6B0E3477...

_____
Signature

Austin Lamarco

_____
Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **TRIUMPH CONSTRUCTION CORP**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signed by:

_____          _____
Signature                                              Printed Name

John Scott